UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TYLER JOHN BUCK,<br><br>         Plaintiff,<br><br>  vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC;<br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br>TRANS UNION, LLC; VERIZON WIRELESS, INC.;<br>AND JEFFERSON CAPITAL SYSTEMS, LLC,<br><br>         Defendants. | NO.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## I.    COMPLAINT

Tyler John Buck ("Plaintiff" or "Mr. Buck") brings this Complaint against Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union, LLC ("Trans Union") (collectively, "Credit Bureau Defendants"); Verizon Wireless, Inc. ("Verizon"); and Jefferson Capital Systems, LLC ("Jefferson") (collectively, "Defendants") for actual, statutory, and punitive damages, costs, and attorneys' fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.,* arising out of Defendants' inaccurate reporting of a fraudulent account on Plaintiff's credit reports.

## II.    PRELIMINARY STATEMENT

1.    This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

COMPLAINT- 1

**TERRELL MARSHALL LAW GROUP PLLC**<br>936 North 34th Street, Suite 300<br>Seattle, Washington 98103-8869<br>TEL. 206.816.6603 • FAX 206.319.5450<br>www.terrellmarshall.com

2.      The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

3.      The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added).

4.      The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

5.      In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies, § 1681i, and their furnishers of information, 15 U.S.C. § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports.

6.      This case concerns the Defendants' inaccurate reporting of a fraudulent account on Plaintiff's credit reports. Defendants inaccurately reported the fraudulent account for years despite Plaintiff's multiple disputes with Defendants.

7.      Accordingly, Plaintiff brings claims against Equifax, Experian, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for their failure to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

8.      Plaintiff also brings claims against Verizon and Jefferson for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

COMPLAINT- 2

1

2

### III.    THE PARTIES

3      9.      Plaintiff Tyler John Buck is a natural person who resides in the City of

4 University Place, in Pierce County, Washington, and is a "consumer" as that term is defined in

5 15 U.S.C. § 1681a(c).

6      10.     Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited

7 liability company authorized to do business in the State of Washington, including within this

8 District.

9      11.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

10 Equifax is regularly engaged in the business of assembling, evaluating, and disbursing

11 information concerning consumers for the purpose of furnishing consumer reports, as defined

12 in 15 U.S.C. § 1681a(d) to third parties.

13     12.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation

14 with a principal place of business located at 701 Experian Pkwy, Allen, Texas 75013, and is

15 authorized to do business in the State of Washington, including within this District.

16     13.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

17 Experian is regularly engaged in the business of assembling, evaluating, and disseminating

18 information concerning consumers for the purpose of furnishing consumer reports, as

19 defined in 15 U.S.C. § 1681a(d) to third parties.

20     14.     Defendant Trans Union, LLC ("Trans Union") is a limited liability company with

21 a principal place of business located at 2 Baldwin Place, Chester, PA 19022, and is authorized

22 to do business in the State of Washington, including within this District.

23     15.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. §

24 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and

25 disseminating information concerning consumers for the purpose of furnishing consumer

26 reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

27     16.     Defendant Verizon Wireless, Inc. ("Verizon") is a wireless network operator

with its principal place of business located at 1095 Avenue of the Americas, New York, New

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

York 10036, and is authorized to do business in the State of Washington, including within this District.

17.    Verizon is a creditor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

18.    Defendant Jefferson Capital Systems, LLC ("Jefferson") is a debt collection agency with its principal place of business located at 16 McLeland Road, Saint Cloud, MN 56303, and is authorized to do business in the State of Washington, including within this District.

19.    Jefferson is a "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## IV.    JURISDICTION AND VENUE

20.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and in the Tacoma Division of this District.

## V.    FACTS

### Defendants' Processing of Credit Information

22.    The Credit Bureau Defendants regularly receive information about consumers from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

23.    These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

24.    The Credit Bureau Defendants collect information from thousands of furnishers.

COMPLAINT- 4

25.     The process by which the Credit Bureau Defendants receive, sort, and store information is largely electronic.

26.     Furnishers, such as Verizon and Jefferson, report credit information to the Credit Bureau Defendants through the use of coded tapes that are transmitted to Defendants on a monthly basis through software known as Metro 2.

27.     The Credit Bureau Defendants take the credit information reported by furnishers and create consumer credit files.

28.     The Credit Bureau Defendants maintain credit files on more than 200 million consumers.

29.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes**

30.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

31.     Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

32.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

33.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear

COMPLAINT- 5

on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

34.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

35.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

36.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**An Identity Thief Opens a Fraudulent Verizon Wireless Account
in Plaintiff's Name**

37.     On September 28, 2018, unbeknownst to Plaintiff and without Plaintiff's consent, an imposter opened a Verizon wireless account and executed three (3) installment loan agreements ("the agreements") in Plaintiff's name.

38.     In completing the agreements, the imposter used Plaintiff's name and address; however, the imposter used three separate telephone numbers issued in Seattle, Washington, which Plaintiff has never used or ever been associated with.

39.     The agreements were for the amounts of $470.00 for the purchase of an Apple iPad, $810.00 for the purchase of an Apple iPhone, and $810.00 for the purchase of an additional Apple iPhone.

40.     At some point in time after the imposter opened the fraudulent Verizon account and forged Plaintiff's signature on the agreements, Verizon, and later Jefferson, furnished credit history information regarding the account and agreements to the national credit reporting agencies, Equifax, Experian, and Trans Union.

COMPLAINT- 6

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

**Plaintiff First Disputes the Validity of the Account with Verizon
in October 2018**

41.     On or about October 2, 2018, Plaintiff went into the Verizon store in
Lakewood, Washington to pay his monthly pre-paid cell phone service bill as he had done
several times before.

42.     Much to his surprise, the Verizon representative asked Plaintiff which account
he would like to make a payment on. Plaintiff responded that he only had one account. The
representative then explained that an additional account had recently been opened in his
name, and that several new Apple devices had been purchased in connection with the
additional account.

43.     Plaintiff again explained that he had not opened an additional account, nor
had he recently purchased any new devices. The Verizon representative then instructed
Plaintiff to call Verizon's fraud department.

44.     Later that same day, Plaintiff called Verizon to dispute the fraudulent account
and to explain that he believed he was the victim of identity theft.

45.     Plaintiff spoke with a Verizon representative over the phone. Plaintiff
explained that he believed he was the victim of identity theft and that he had not opened a
Verizon account nor entered into any purchase agreements. After obtaining the signed
purchase agreements, Plaintiff insisted that the signature on the forged documents looked
nothing like his own and requested that Verizon absolve him of responsibility for the account
and agreements fraudulently opened in his name.

46.     Verizon's representative then informed Plaintiff he would have to prove it was
not him who had opened the account by filing a police report and sending said report to
Verizon.

47.     Despite Plaintiff's dispute, Verizon continued to hold Plaintiff liable for the
fraudulent debts.

COMPLAINT- 7

**Plaintiff files a Police Report with the Seattle Police Department
in October 2018**

48.    On or about October 22, 2018, Plaintiff contacted the West Seattle Police Department and filed a police report, report/general offense ("GO") number 2018-395277, regarding the identity theft he had experienced.

49.    The full police report included the following narrative:

> On 10/22/2018 I was working as unit 2F33 in the city of Seattle. At 1142hours, I was dispatched to 828 S Cloverdale St to investigate a fraud call. The911 call stated: INV THEFT AND FRAUD, OCCURRED 9/28/18, FORMER FRIEND ANDROOMMATE TOOK THE RP'S DEBIT CARD, ID, AND SOCIAL SECURITY CARD AND OPENED AVERIZON ACCOUNT IN HIS NAME. SUSPECT NO LONGER LIVING HERE AND UNK WHERE SHE ISNOW.I arrived and spoke with V/Buck. He explained to me that he let his friend from high school stay with him for about a month. The friend is Flatten-Morfield, Julie W/F/55 years old. He kicked her out on 10/20/2018 because she was always bringing people over and was taking advantage of him. V/Buck stated that he went into Verizon to pay his bill. The Verizon employee asked him which bill would he like to pay? V/Buck was confused because he only has one account. The Verizon employee told him that he currently has two accounts with S/Flatten-Morfield being the manager of one of the accounts. The Verizon employee told him that the account with S/Flatten-Morfield is approximately $3,000 due to her buying an I-Pad and two I-Phones. V/Buck explained to me that he did not give S/Flatten-Morfield permission to open an account with his information. V/Buck stated that he is a Longshoreman and works at night. S/Flatten-Morfield must have gone inside his room when he was at work and got his social security number, his driver's license and debit card number to add herself to his account. He is still in possession of all of his identifications and documents. V/Buck did not have the Verizon account number that S/Flatten-Morfield opened up. He did provide me with the phone numbers for the devices she fraudulently received. The phone numbers are (206)-900-1620, (206)-900-5969 and(253)-433-1194.V/Buck does not know where S/Flatten-Morfield is currently. She told him she was going to be living in her vehicle. She drives a blue 2002 Lincoln Continental. I provided V/Buck with a business card and case number. I later flagged and uploaded my ICV and BWV at the Southwest Precinct.

COMPLAINT- 8

50.     The full police report also listed the Apple iPad and two Apple iPhones associated with the phone numbers (206)-900-1620, (206)-900-5969, and (253)-433-1194 as stolen property, and named Julie Flatten-Morfield as the only suspect in the case.

51.     The police department provided Plaintiff a single-page version of the police report that stated the following in the "Offenses (Completed/Attempted)" section of the report: "FRAUD-IDENTITY THEFT – COMPLETED".

**Plaintiff Submits the Police Report to Verizon in October 2018**

52.     In or about late October 2018, Plaintiff promptly sent the single-page police report that he had been provided to Verizon in support of his October 2018 dispute.

53.     Despite the single-page police report's confirmation that Plaintiff's identity had been stolen as he was the victim of "COMPLETED" fraud and identity theft, and the fact that the full version of the police report was publicly available, Verizon failed to properly investigate Plaintiff's dispute and instead continued to hold Plaintiff liable for the fraudulent debts, reporting the same to the Credit Bureau Defendants.

54.     Thereafter, Plaintiff continued to dispute the fraudulent account with Verizon through mid-September 2021, to no avail.

**Plaintiff Files a Complaint with the Consumer Financial Protection Bureau ("CFPB") in October 2018**

55.     In or about October 2018, Plaintiff submitted an online Complaint with the CFPB pleading for help to get the Credit Bureau Defendants to remove the fraudulent Verizon account from his credit reports.

56.     In or about November 2018, Plaintiff received a written response to his Complaint from the CFPB.

57.     Upon receiving the response from the CFPB, Plaintiff called the CFPB to inquire as to what more he could do to remove the fraudulent account from his credit reports. The CFPB representative instructed Plaintiff to contact the Credit Bureau Defendants to resolve the issue.

COMPLAINT- 9

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**Plaintiff's First Dispute with the Credit Bureau Defendants
in October 2018**

58.     In or about October 2018, Plaintiff called the Credit Bureau Defendants to dispute the fraudulent Verizon account reporting on his credit reports.

59.     Plaintiff spoke with a representative at Equifax, Experian, and Trans Union and explained that the account was fraudulent and that he had filed a police report in support of the same.

60.     Each of the Credit Bureau Defendants' representatives informed Plaintiff he would need to contact Verizon directly to resolve the issue.

61.     Plaintiff did not receive any dispute results from the Credit Bureau Defendants in response to his October 2018 dispute.

62.     Thereafter, the Credit Bureau Defendants continued to report the fraudulent account on Plaintiff's credit reports.

**Verizon Sells the Debt Associated with the Fraudulent Account to Collections
Agency, Jefferson Capital, in March 2019**

63.     On or about March 3, 2019, having received no payments on the fraudulent account, Verizon sold the debt associated with the fraudulent account taken out in Plaintiff's name to collections agency, Jefferson Capital.

64.     Shortly thereafter, in or about March 2019, Jefferson placed the account for collection and began attempting to collect the outstanding debt, in the amount of $2,714.00, from Plaintiff using various means including via telephone call, written letter, and by furnishing data regarding the settled debt account, Verizon account number 2734834950**** ("the Verizon/Jefferson collections tradeline") to the Credit Bureau Defendants, Equifax, Experian, and Trans Union.

COMPLAINT- 10

**Plaintiff First Disputes the Fraudulent Account with Collections Agency, Jefferson Capital, in or about March 2019**

65.     Upon receiving notice from Jefferson indicating that the Verizon account had been placed in collections in or about March 2019, Plaintiff called Jefferson to dispute the fraudulent account.

66.     Plaintiff informed the Jefferson representative that the debt did not belong to him as he was the victim of identity theft. The representative informed Plaintiff that he was unable to assist Plaintiff but would ask a manager to contact him.

67.     A Jefferson manager then requested the police report from Plaintiff. Plaintiff told the manager that he had already provided this information to Verizon, and that Jefferson should request it from Verizon.

**Synchrony Bank Denies Plaintiff's Application for Credit in
October 2020 Due to Defendant Trans Union's Inaccurate Credit Reporting**

68.     On or about October 31, 2020, Plaintiff applied for an eBay credit card issued through Synchrony Bank ("Synchrony").

69.     As part of his credit application, Plaintiff provided Synchrony with his personal identification information, including his Social Security number, and authorized it to obtain his credit report.

70.     In order to determine whether Plaintiff qualified financially for the financing he sought, Synchrony obtained a copy of Plaintiff's credit report from Defendant Trans Union.

71.     At that time, Defendant Trans Union was reporting the Verizon/Jefferson collections tradeline on Plaintiff's credit report, which it provided to Synchrony.

72.     Shortly thereafter, Synchrony informed Plaintiff that his credit application had been denied due to his credit score and/or derogatory information contained in his Trans Union credit file.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

73.     Plaintiff's credit application with Synchrony was denied due to Trans Union's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**LoanDepot.com LLC Denies Plaintiff's Application for a Home Mortgage Loan in December 2020 Due to Defendants Equifax and Trans Union's Inaccurate Credit Reporting**

74.     On or about December 15, 2020, Plaintiff applied for a home mortgage loan through LoanDepot.com LLC ("LoanDepot").

75.     As part of his mortgage application, Plaintiff provided LoanDepot with his personal identification information, including his Social Security number, and authorized it to obtain his credit report.

76.     In order to determine whether Plaintiff qualified financially for the financing he sought, LoanDepot obtained a copy of Plaintiff's credit report from Defendants Equifax and Trans Union via Credco.

77.     At that time, Defendants Equifax and Trans Union were both reporting the Verizon/Jefferson collections tradeline on Plaintiff's credit reports, which they provided to LoanDepot.

78.     Shortly thereafter, LoanDepot informed Plaintiff that his credit application had been denied due to his credit scores and/or derogatory information contained in his Equifax and/or Trans Union credit reports.

79.     Plaintiff's credit application with LoanDepot was denied due to Defendants Equifax and Trans Union's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Citibank Denies Plaintiff's Application for Credit in January 2021 Due to Defendants Equifax and Trans Union's Inaccurate Credit Reporting**

80.     On or about January 6, 2021, Plaintiff applied for a credit card issued through Citibank.

COMPLAINT- 12

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

81.     As part of his credit application, Plaintiff provided Citibank with his personal identification information, including his Social Security number, and authorized it to obtain his credit report.

82.     In order to determine whether Plaintiff qualified financially for the financing he sought, Citibank obtained a copy of Plaintiff's credit reports from Defendants Equifax and Trans Union.

83.     At that time, Defendants Equifax and Trans Union reported the Verizon/Jefferson collections tradeline on Plaintiff's credit report, which they provided to Citibank.

84.     Shortly thereafter, Citibank informed Plaintiff that his credit application had been denied due to his credit scores and/or derogatory information contained in his Equifax and/or Trans Union credit reports.

85.     Plaintiff's credit application with Citibank was denied due to Equifax and Trans Union's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Plaintiff Disputes with Defendant Trans Union in January 2021**

86.     On or about January 7, 2021, outraged, upset, embarrassed, and frustrated at the continued and ongoing inaccurate reporting of the Verizon/Jefferson collections tradeline, and the multiple credit denials he had now suffered, Plaintiff called Defendant Trans Union and disputed the inaccurate reporting of the Verizon/Jefferson collections tradeline with a Trans Union representative.

87.     Plaintiff explained that he was the victim of identity theft and that the fraudulent account did not belong to him.

88.     The Trans Union representative told Plaintiff to contact a third-party credit repair organization for help with the issue.

89.     On or about February 17, 2021, Defendant Trans Union mailed Plaintiff a copy of his dispute results.

COMPLAINT- 13

90.　Upon review, Plaintiff was shocked, upset, and stressed to discover that Trans Union had verified the fraudulent account as accurate and continued to report the disputed tradeline as follows:

> Verizon Wireless
> Date Opened: 9/28/2018
> Balance: $2,714.00
> Account Type: Open Account
> Pay Status: >In Collection<
> Past Due: >$2,714<
> Remarks: ACCT INFO DISPUTED BY CONSUMR (sic); >PLACED FOR COLLECTION<
> Estimated month and year that this item will be removed: 09/2025

**Elan Financial Denies Plaintiff's Application for Credit in
February 2021 Due to Defendant Trans Union's Inaccurate Credit Reporting**

91.　On or about February 14, 2021, Plaintiff applied for a personal loan through Elan Financial ("Elan").

92.　As part of his credit application, Plaintiff provided Elan with his personal identification information, including his Social Security number, and authorized it to obtain his credit report.

93.　In order to determine whether Plaintiff qualified financially for the financing he sought, Elan obtained a copy of Plaintiff's credit report from Defendant Trans Union.

94.　At that time, Defendant Trans Union reported the Verizon/Jefferson collections tradeline on Plaintiff's credit file, which it provided to Elan.

95.　Shortly thereafter, Elan informed Plaintiff that his credit application had been denied due to his credit score and/or derogatory information contained in his Trans Union credit report.

96.　Plaintiff's credit application with Elan was denied due to Trans Union's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**OneMain Financial Denies Plaintiff's Application for Credit in
February 2021 Due to Defendants Equifax and Trans Union's Inaccurate Credit
Reporting**

97.    On or about February 17, 2021, Plaintiff applied for a personal loan through
OneMain Financial ("OneMain").

98.    As part of his credit application, Plaintiff provided OneMain with his personal
identification information, including his Social Security number, and authorized it to obtain his
credit report.

99.    In order to determine whether Plaintiff qualified financially for the financing he
sought, OneMain obtained a copy of Plaintiff's credit report from Defendants Equifax and
Trans Union.

100.    At that time, Defendants Equifax and Trans Union reported the
Verizon/Jefferson collections tradeline on Plaintiff's credit reports, which they provided to
OneMain.

101.    Shortly thereafter, OneMain informed Plaintiff that his credit application had
been denied due to his credit scores and/or derogatory information contained in his Equifax
and/or Trans Union credit reports.

102.    Plaintiff's credit application with OneMain was denied due to Equifax and
Trans Union's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson
collections tradeline, which does not belong to Plaintiff.

**Finance of America Companies Denies Plaintiff's Application for a Home Mortgage
Loan in February 2021 Due to the Credit Bureau Defendants' Inaccurate Credit
Reporting**

103.    On or about February 22, 2021, Plaintiff applied for home mortgage
refinancing through Finance of America Companies ("Finance of America").

104.    As part of his credit application, Plaintiff provided Finance of America with his
personal identification information, including his Social Security number, and authorized it to
obtain his credit reports.

COMPLAINT- 15

105.    In order to determine whether Plaintiff qualified financially for the financing he sought, Finance of America obtained a copy of Plaintiff's credit reports from the Credit Bureau Defendants, Equifax, Experian, and Trans Union via CIS Credit Solutions.

106.    At that time, The Credit Bureau Defendants, via CIC Credit Solutions, reported the Verizon/Jefferson collections tradeline on Plaintiff's credit reports, which they provided to Finance of America.

107.    Shortly thereafter, Finance of America informed Plaintiff that his credit application had been denied due to his credit scores and/or derogatory information contained in his credit reports.

108.    Plaintiff's credit application with Finance of America was denied due to the Credit Bureau Defendants' inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Synchrony Bank Denies Plaintiff's Application for Credit in**
**July 2021 Due to Defendant Experian's Inaccurate Credit Reporting**

109.    On or about July 5, 2021, Plaintiff applied for an Amazon credit card issued through Synchrony Bank ("Synchrony").

110.    As part of his credit application, Plaintiff provided Synchrony with his personal identification information, including his Social Security number, and authorized it to obtain his credit report.

111.    In order to determine whether Plaintiff qualified financially for the financing he sought, Synchrony obtained a copy of Plaintiff's credit report from Defendant Experian.

112.    At that time, Defendant Experian reported the Verizon/Jefferson collections tradeline on Plaintiff's credit file, which it provided to Synchrony.

113.    Shortly thereafter, Synchrony informed Plaintiff that his credit application had been denied due to his credit score and/or derogatory information contained in his Experian credit report.

COMPLAINT- 16

114.    Plaintiff's credit application with Synchrony was denied due to Defendant

Experian's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson

collections tradeline, which does not belong to Plaintiff.

**American Express Denies Plaintiff's Application for Credit in**
**August 2021 Due to Defendant Experian's Inaccurate Credit Reporting**

115.    On or about August 10, 2021, Plaintiff applied for an American Express credit

card.

116.    As part of his credit application, Plaintiff provided American Express with his

personal identification information, including his Social Security number, and authorized it to

obtain his credit report.

117.    In order to determine whether Plaintiff qualified financially for the financing he

sought, American Express obtained a copy of Plaintiff's credit report from Defendant

Experian.

118.    At that time, Defendant Experian reported the Verizon/Jefferson collections

tradeline on Plaintiff's credit file, which it provided to American Express.

119.    Shortly thereafter, American Express informed Plaintiff that his credit

application had been denied due to his credit score and/or derogatory information contained

in his Experian credit report.

120.    Plaintiff's credit application with American Express was denied due to

Defendant Experian's inaccurate credit reporting, specifically with regard to the

Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**WebBank Denies Plaintiff's Application for Credit in**
**August 2021 Due to Defendant Experian's Inaccurate Credit Reporting**

121.    On or about August 10, 2021, Plaintiff applied for a Fingerhut credit card issued

through WebBank.

COMPLAINT- 17

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

122.    As part of his credit application, Plaintiff provided WebBank with his personal identification information, including his Social Security number, and authorized it to obtain his credit report.

123.    In order to determine whether Plaintiff qualified financially for the financing he sought, WebBank obtained a copy of Plaintiff's credit report from Defendant Experian.

124.    At that time, Defendant Experian reported the Verizon/Jefferson collections tradeline on Plaintiff's credit report, which it provided to WebBank.

125.    Shortly thereafter, WebBank informed Plaintiff that his credit application had been denied due to his credit score and/or derogatory information contained in his Experian credit report.

126.    Plaintiff's credit application with WebBank was denied due to Defendant Experian's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Capital One Denies Plaintiff's Application for Credit in**
**August 2021 Due to Defendants Equifax and Experian's Inaccurate Credit Reporting**

127.    On or about August 19, 2021, Plaintiff applied for a Capital One credit card.

128.    As part of his credit application, Plaintiff provided Capital One with his personal identification information, including his Social Security number, and authorized it to obtain his credit report.

129.    In order to determine whether Plaintiff qualified financially for the financing he sought, Capital One obtained a copy of Plaintiff's credit reports from Defendants Equifax and Experian.

130.    At that time, Defendants Equifax and Experian reported the Verizon/Jefferson collections tradeline on Plaintiff's credit reports, which they provided to Capital One.

131.    Shortly thereafter, Capital One informed Plaintiff that his credit application had been denied due to his credit scores and/or derogatory information contained in his Equifax and/or Experian credit reports.

COMPLAINT- 18

132.    Plaintiff's credit application with Capital One was denied due to Defendants Equifax and Experian's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Washington State Employee Credit Union Denies Plaintiff's Application for a Home Mortgage Loan in August 2021 Due to Defendants Equifax and Experian's Inaccurate Credit Reporting**

133.    On or about August 27, 2021, Plaintiff applied for home mortgage refinancing through Washington State Employee Credit Union ("WSECU").

134.    As part of his credit application, Plaintiff provided WSECU with his personal identification information, including his Social Security number, and authorized it to obtain his credit reports.

135.    In order to determine whether Plaintiff qualified financially for the financing he sought, WESCU obtained a copy of Plaintiff's credit reports from the Credit Bureau Defendants, Equifax, Experian, and Trans Union via American Reporting Company.

136.    At that time, Defendants Equifax and Experian reported the Jefferson collections tradeline on Plaintiff's credit files, which they provided to WESCU.

137.    Shortly thereafter, WESCU informed Plaintiff that before his mortgage application could be approved, he would need to pay the $2,714.00 balance owed on the Verizon/Jefferson collections tradeline.

138.    Plaintiff's home mortgage application with WESCU was denied due to Defendants Equifax and Experian's inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Plaintiff Disputes the Fraudulent Account with Verizon in September 2021**

139.    On or about September 13, 2021, upset by the continued inaccurate reporting of the collections account and multiple related credit denials, Plaintiff again called Verizon to dispute the fraudulent account.

COMPLAINT- 19

140.   The Verizon representative informed Plaintiff the matter would be sent to Verizon's fraud investigation team for review of the fraudulent account and the October 2018 police report.

**Fairway Independent Mortgage Corporation Denies Plaintiff's Mortgage Application in September 2021 Due to the Credit Bureau Defendants' Inaccurate Credit Reporting**

141.   On or about September 14, 2021, Plaintiff applied for home mortgage financing through Fairway Independent Mortgage Corporation ("Fairway").

142.   As part of his mortgage application, Plaintiff provided Fairway with his personal identification information, including his Social Security number, and authorized it to obtain his credit reports.

143.   In order to determine whether Plaintiff qualified financially for the financing he sought, Fairway obtained a copy of Plaintiff's credit reports from the Credit Bureau Defendants, Equifax, Experian, and Trans Union via CIS Credit Solutions.

144.   At that time, the Credit Bureau Defendants reported the Verizon/Jefferson collections tradeline on Plaintiff's credit reports, which they provided to Fairway.

145.   Shortly thereafter, Fairway informed Plaintiff that his mortgage application had been denied due to his credit scores and/or derogatory information contained in his Equifax, Experian, and/or Trans Union credit reports.

146.   Plaintiff's mortgage application with Fairway was denied due to the Credit Bureau Defendants' inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Verizon's Response to Plaintiff's September 2021 Dispute**

147.   On or about September 14, 2021, Plaintiff received correspondence from Verizon stating as follows:

> We are in receipt of your complaint regarding your desire to have the derogatory remark removed from your credit report due to

COMPLAINT- 20

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    fraud. Please see the below response, as it will serve as our final
2    position on this matter.

3    We spoke with you on multiple occasions from October 2, 2018,
     through today, September 14, 2021, and provided you with the
4    steps and requirements for the police report and to claim the
5    account as fraudulent. We requested that you obtain another
     police report with a detailed dispute addressing Verizon and what
6    had occurred. You have consistently declined the steps provided to
7    you citing that this account is fraudulent and you are not getting a
     new police report, we advised you that until you obtain this with
8    the requested narrative that Verizon would be unable to move
     forward. We have even provided you with the link and information
9    to fill out our Fraud claim online and attach the new report.

10   Per our conversation with you on September 13, 2021, we
11   contacted the Fraud Team to have them review your account and
     the Police Report you provided. As per the Fraud team the Police
12   Report you provided does not have a narrative of Verizon and
13   therefore we can not accept it as a valid document towards this
     case. The Fraud Team has deemed this account as not fraudulent
14   until a police report with the proper narrative is presented. The
15   account has been sold to and currently resides with the outside
     collection agency Jefferson Capital Systems, LLC. Please contact
16   them directly at (800) 281-2793 for any additional assistance with
17   the account. Verizon Wireless no longer has a vested interest in this
     account.

18   While we appreciate all of our customers; you continue to file
19   complaints and refuse the steps provided to you with regards to a
     resolution. We will not be discussing it further; should you continue
20   to contact us regarding this issue, we will review all available
     options up to and including termination of your service.
21

22        148.    Upon reviewing the September 14th letter, Plaintiff suffered significant

23   emotional distress and feelings of panic. Plaintiff was at a loss for what more he could

24   possibly do to remove the fraudulent account from his credit reports.

25        149.    On or about September 21, 2021, Plaintiff received an email from Verizon

26   Executive Relations stating in relevant part:

27

COMPLAINT- 21

1
2
3
4

"We have received confirmation from the Fraud team that the account has been officially identified as Fraud and they will be contacting Jefferson Capital Systems, LLC to repurchase the account and mark it fraud. Once this is completed the credit report will be amended to reflect the account as a fraudulent account clearing the derogatory mark off of your report."

5
6

**Plaintiff Disputes with the Credit Bureau Defendants in November 2021**

7
8

150.    In or about late September or early October 2021, Plaintiff accessed his Equifax, Experian, and Trans Union credit reports.

9
10

151.    Upon review, Plaintiff was upset to discover that the Credit Bureau Defendants were still reporting the Verizon/Jefferson collections tradeline on his credit reports.

11
12

**Lendmark Financial Services Denies Plaintiff's Mortgage Application in November 2021**

13
14

152.    On or about November 9, 2021, Plaintiff applied for a home mortgage loan through Lendmark Financial Services ("Lendmark").

15
16
17

153.    As part of his mortgage application, Plaintiff provided Lendmark with his personal identification information, including his Social Security number, and authorized it to obtain his credit reports.

18
19
20

154.    In order to determine whether Plaintiff qualified financially for the financing he sought, Lendmark obtained a copy of Plaintiff's credit reports from the Credit Bureau Defendants.

21
22

155.    At that time, the Credit Bureau Defendants reported the Verizon/Jefferson collections tradeline on Plaintiff's credit files, which they provided to Lendmark.

23
24
25

156.    Shortly thereafter, Lendmark informed Plaintiff that his credit application had been denied due to his credit scores and/or derogatory information contained in his credit reports.

26
27

COMPLAINT- 22

157.    Plaintiff's credit application with Lendmark was denied due to the Credit Bureau Defendants' inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**Plaintiff Disputes with the Credit Bureau Defendants in November 2021**

158.    On or about November 19, 2021, Plaintiff mailed a written dispute letter to each of the Credit Bureau Defendants.

159.    Along with his dispute, Plaintiff included a copy of his driver's license, Social Security card, a recent copy of his credit reports respective to each of the Credit Bureau Defendants, a copy of the single-page version of the police report, a copy of the full, four-page police report, his handwritten signature, and the fraudulent signature as reflected on the Verizon agreements.

**Capital One Denies Plaintiff's Credit Application in December 2021**

160.    On or about December 5, 2021, Plaintiff applied for a Bass Pro Shop credit card issued through Capital One.

161.    As part of his credit application, Plaintiff provided Capital One with his personal identification information, including his Social Security number, and authorized it to obtain his credit reports.

162.    In order to determine whether Plaintiff qualified financially for the financing he sought, Capital One obtained a copy of Plaintiff's credit reports from the Credit Bureau Defendants.

163.    At that time, the Credit Bureau Defendants reported the Verizon/Jefferson collections tradeline on Plaintiff's credit reports, which they provided to Capital One.

164.    Shortly thereafter, Capital One informed Plaintiff that his credit application had been denied due to his credit scores and/or derogatory information contained in his credit report.

COMPLAINT- 23

165.    Plaintiff's credit application with Capital One was denied due to the Credit Bureau Defendants' inaccurate credit reporting, specifically with regard to the Verizon/Jefferson collections tradeline, which does not belong to Plaintiff.

**The Credit Bureau Defendants' Responses to Plaintiff's November 2021 Dispute**

166.    Plaintiff never heard back from Defendants Equifax, Experian, or Trans Union in response to his November 2021 dispute.

167.    It was not until about April 2022 that Defendants Equifax, Experian, and Trans Union finally had deleted the fraudulent Verizon/Jefferson collections account from Plaintiff's credit reports.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedure to Assure Maximum Possible Accuracy
(First Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

168.    Plaintiff re-alleges and incorporates the allegations set forth above as if fully stated herein.

169.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

170.    On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

171.    Despite knowledge that the disputed account was fraudulent, and the fact that the police report had been provided to them and was public record, the Credit Bureau Defendants readily sold false credit reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

COMPLAINT- 24

172.    The Credit Bureau Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintain concerning Plaintiff.

173.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage in the form of credit denials; harm to his credit score; harm to his debt-to-income ratio; inability to purchase and/or secure credit at competitive rates; the inability to purchase and earn equity in a home; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including stress, anxiety, and the mental and emotional pain, anguish, humiliation, and embarrassment of having to explain the inaccurate reporting of the fraudulent account and debt to his potential creditors.

174.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

175.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
**Failure to Perform Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

176.    Plaintiff re-alleges and incorporates the allegations set forth above as if fully stated herein.

177.    The FCRA mandates that a credit reporting agency conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information

COMPLAINT- 25

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id*.

178.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from a consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

179.    The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing, on multiple occasions, to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit reports and files.

180.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage in the form of credit denials; harm to his credit score; harm to his debt-to-income ratio; inability to purchase and/or secure credit at competitive rates; the inability to purchase and earn equity in a home; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including stress, anxiety, and the mental and emotional pain, anguish, humiliation, and embarrassment of having to explain the inaccurate reporting of the fraudulent account and debt to his potential creditors.

181.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

COMPLAINT- 26

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    182.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau

2    Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n or

3    § 1681o.

4

5    **COUNT III**
**15 U.S.C. § 1681s-2(b)**

6    **Failure to Conduct an Investigation of the Disputed Information and Review all Relevant**
**Information Provided by the Consumer**

7    **(First Claim for Relief Against Defendants Verizon and Jefferson)**

8    183.    Plaintiff re-alleges and incorporates the allegations set forth above as if fully

9    stated herein.

10    184.    Defendant Verizon published inaccurate information regarding the fraudulent

11    account on multiple occasions to Equifax, Experian, and Trans Union.

12    185.    Defendant Jefferson published inaccurate information regarding the fraudulent

13    account on multiple occasions between March 2019 and September 2021 to Equifax,

14    Experian, and Trans Union.

15    186.    Defendants Verizon and Jefferson Capital violated 15 U.S.C. § 1681s-2(b) by

16    failing to fully and properly investigate Plaintiff's disputes of their inaccurate representations;

17    by failing to review all relevant information regarding the same as provided to them from the

18    Credit Bureau Defendants via ACDVs; and by failing to correct their inaccurate reporting and

19    communicate the same to the Credit Bureau Defendants within the 30-day time frame

20    provided in the FCRA.

21    187.    As a result of Defendants Verizon and Jefferson's conduct, action, and inaction,

22    Plaintiff suffered damage in the form of credit denials; harm to his credit score; harm to his

23    debt-to-income ratio; inability to purchase and/or secure credit at competitive rates; the

24    inability to purchase and earn equity in a home; detriment to his credit rating; the

25    expenditure of time and money disputing and trying to correct the inaccurate credit

26    reporting; and emotional distress including stress, anxiety, and the mental and emotional

27    pain, anguish, humiliation, and embarrassment of having to explain the inaccurate reporting

COMPLAINT- 27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

of the fraudulent account and debt to his potential creditors.

188.    Defendants Verizon and Jefferson's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

189.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Verizon and Jefferson in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n or § 1681o.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff PRAYS FOR RELIEF as follows:

A)    Determining that Defendants, jointly and severally, negligently and/or willfully violated the FCRA;

B)    Awarding actual damages, statutory, and punitive damages as provided by the FCRA;

C)    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

D)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 13th day of December, 2022.


TERRELL MARSHALL LAW GROUP PLLC

By: /s/  Beth E. Terrell, WSBA #26759
    Beth E. Terrell, WSBA #26759
    Jennifer Rust Murray, WSBA #36983
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

Email: bterrell@terrellmarshall.com
Email: jmurray@terrellmarshall.com

3

4

Hans W. Lodge* (MN Bar #0397012)
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205

5

Minneapolis, MN 55413
Telephone: (612) 607-7794

6

Facsimile: (612) 584-4470
hlodge@bm.net

7

8

*Pro Hac Vice to be requested
Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT- 29